UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GILL INDUSTRIES, INC.,

    Plaintiff,

v

REI AUTOMATION, INC.,

    Defendant.

Case No. 1:18-CV-106

Hon. Paul L. Maloney

| | |
|---|---|
| Robert D. Wolford (P62595)<br>Christopher E. Nyenhuis (P80028)<br>Miller Johnson<br>45 Ottawa Ave. S.W., Ste. 1100<br>P.O. Box 306<br>Grand Rapids, MI 49501-0306<br>616-831-1700<br>Attorneys for Plaintiff | Ronald G. DeWaard (P44117)<br>John J. Rolecki (P78460)<br>Varnum LLP<br>Business Address and Telephone:<br>Bridgewater Place, P.O. Box 352<br>Grand Rapids, MI 49501-0352<br>(616) 336-6000<br>rgdewaard@varnumlaw.com<br>jjrolecki@vernumlaw.com<br>Attorneys for Defendant |

## DEFENDANT'S ANSWER TO COMPLAINT, AFFIRMATIVE AND OTHER DEFENSES, AND COUNTERCLAIMS

NOW COMES Defendant, REI Automation, Inc., by and through its attorneys, VARNUM LLP, and for its answer to Plaintiff's Complaint, states as follows:

1. Plaintiff, Gill Industries, Inc. ("Gill"), is a Michigan corporation whose principal place of business is located at 5271 Plainfield Ave Grand Rapids, MI 49525.

**ANSWER: Admitted.**

2. Defendant, REI Automation, Inc. ("REI") is a South Carolina Corporation whose principal place of business is located at 1240 Veterans Road, Columbia, South Carolina 29209.

**ANSWER: Admitted.**

3. REI conducts business in the state or Michigan by, for example, supplying industrial equipment to customers such as Gill.

**ANSWER: REI denies the allegations set forth in paragraph 3 as untrue.**

4. Venue is appropriate because REI conducts business in Kent County and because Gill maintains a place of business in Kent County.

**ANSWER: Paragraph 4 sets forth a legal conclusion to which no answer is required. To the extent an answer is required, REI denies that it conducts business in Kent County.**

5. The amount in controversy is greater than $25,000.

**ANSWER: Admitted.**

## GENERAL ALLEGATIONS

6. Gill is a global leader in the supply of precision-engineered assemblies and modules for the automotive, multi-use vehicle and furniture industries.

**ANSWER: Admitted that Gill deals in the business of precision-engineered assemblies and modules for the alleged industries. REI lacks knowledge or information to form a response to the remaining allegations set forth in paragraph 6 and therefore leaves Plaintiff to its proofs.**

7. REI claims that it specializes in designing and building custom industrial equipment, including assembly lines, robotic cells and special-purpose machines.

**ANSWER: Admitted.**

8. Gill engaged REI to provide 4 welding cells to Gill. Each welding cell consisted of various machines and stations, including for example, welding robots, resistance pedestal welders, turntable welders and controllers.

ANSWER: Admitted that welding cells consist of various machines and stations as alleged. REI denies the remaining allegations set forth in paragraph 8 as untrue. By way of further answer, certain of the equipment at issue was ordered by an entity named Gill Manufacturing, Inc. and was to be delivered to Gill Manufacturing, Inc. in Trenton, Georgia.

9. To facilitate the transaction, Gill submitted to REI Purchase Order No. 61825-04 ($604,575 for tooling), Purchase Order No. P046912 ($1,232,605.00 for equipment), and Purchase Order No. P0477150-00-00 ($128,000 for tooling) (the "POs"). **Exhibit 1**.

ANSWER: Admitted that the referenced POs, the terms of which speak for themselves, facilitated a transaction between REI and the entities to be billed. REI denies the remaining allegations set forth in paragraph 9 as untrue. By way of further answer, although Plaintiff did submit Purchase Order No. 61825-04 to REI, the remaining purchase orders referenced were submitted to REI by an entity named Gill Manufacturing, Inc. located in Trenton, Georgia.

10. The original, total amount of the POs was $1,965,180.00.

ANSWER: Admitted.

11. On June 29, 2016, REI issued and Gill accepted two change orders related to the POs that modified certain delivery requirements and reduced the amount of the total price to $1,846,794.00 (the "Change Orders"). **Exhibit 2**.

ANSWER: Admitted.

12. The Change Orders reduced the amount of labor that REI would supply to Gill related to the welding cells, but the Change Orders did not reduce the amount of equipment that REI was to supply to Gill.

**ANSWER: REI denies the allegations set forth in paragraph 12 as untrue.**

13.  Gill has paid to REI a total of $1,680,267.25 against POs 62825-04 and 46912 and $51,200 against PO 477150.

**ANSWER: Admitted.**

14.  The remaining balance on the POs is $115,326.75.

**ANSWER: Admitted.**

15.  However, REI failed to deliver to Gill certain equipment that the POs required REI to supply to Gill.

**ANSWER: REI denies the allegations set forth in paragraph 15 as untrue.**

16.  Most notably, while the POs required REI to supply 4 welding cells to Gill, REI only supplied 3 welding cells.

**ANSWER: REI denies the allegations set forth in paragraph 16 as untrue.**

17.  Accordingly, Gill did not receive, among other things, the following pieces of equipment that would have comprised the fourth welding cell:

- 1 of 4 turntable systems: $19,200;
- 1 of 4 dot preen traceability stations: $18,000;
- 1 of 4 vision systems: $13,275;
- 25% of equipment runoff at REI: $5,500;
- 50% of the full installation and runoff at Gill's Trenton facility: $7,960.00;
- Controls and Miscellaneous Equipment (e.g., circuit breakers, cables, etc.): $20,640.83;
- Total: $84,575.83.

**ANSWER: REI denies the allegations set forth in paragraph 17 and the entirety of its subparts as untrue.**

18. Further, at Gill's request, REI did not complete the installation of the fixtures that Gill ordered, but REI never supplied Gill with the hardware that would have allowed Gill to complete the installation on its own. The value of the tooling and hardware that Gill did not receive is approximately $150,500.00.

**ANSWER: REI denies the allegations set forth in paragraph 18 as untrue.**

19. On March 31, 2017, REI sent Invoice No. 05001-10 in the amount of $115,326.50. REI also sent Invoice No. 05002-5 in the amount of $4,990.00 (collectively, the "Disputed Invoices"). **Exhibit 3.**

**ANSWER: Admitted that REI sent Plaintiff the referenced invoices. By way of further response, Invoice 05002-5 is dated September 19, 2016 and relates to a different project than Invoice No. 05001-10.**

20. REI contends that Gill is responsible for paying REI on the Disputed Invoices.

**ANSWER: Admitted.**

21. However, the Disputed Invoices fail to account for the value of the equipment that REI failed to deliver and that Gill never received.

**ANSWER: REI denies the allegations set forth in paragraph 21 as untrue.**

22. Because the value of the equipment that REI failed to supply to Gill exceeded the amount of the Dispute Invoices, Gill refused to pay the Disputed Invoices to set off the damage REI's failure had caused.

**ANSWER: REI denies the allegations set forth in paragraph 22 as untrue.**

23. Gill has since explained its reasoning for not paying the March Invoice, but REI has persisted in demanding that Gill pay the Disputed Invoices in full.

**ANSWER: Admitted only that Gill has offered various inconsistent explanations for its failure to pay the Disputed Invoices in full, as demanded by REI. Any remaining allegations set forth in paragraph 23 are denied as untrue.**

## COUNT ONE — DECLARATORY JUDGMENT

24. Gill realleges the foregoing allegations as if fully set forth herein.

**ANSWER: REI incorporates and restates its answers to the foregoing allegations as if fully set forth herein.**

25. MCR 2.605(A)(1) states that, "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

**ANSWER: Paragraph 25 states a legal conclusion to which an answer is not required. By way of further answer, MCR 2.605(A)(1) speaks for itself and to the extent that Plaintiff's allegations vary from the terms thereof, they are denied as untrue.**

26. An actual controversy exists between Gill and REI because REI claims that Gill owes REI $120,316.50 to satisfy the Dispute Invoices while Gill, on the other hand, maintains that it does not owe REI any additional funds related to the POs.

**ANSWER: Paragraph 26 states a legal conclusion to which an answer is not required. By way of further answer, REI states that no such controversy arose until after REI began to inquire about the status of the two overdue Disputed Invoices to Gill.**

**WHEREFORE**, Defendant requests that this Honorable Court dismiss Plaintiff's claims, award Defendant its costs, attorney fees, and pre-judgment interest, and grant such other and further relief as may be just and equitable.

## COUNT TWO — BREACH OF CONTRACT

27. Gill realleges the foregoing allegations as if fully set forth herein.

**ANSWER: REI incorporates and restates its answers to the foregoing allegations as if fully set forth herein.**

28. Gill and REI had a contract whereby, pursuant to several purchase orders and as modified by certain change orders, REI would supply Gill with equipment and services consisting of and relating to welding cells.

**ANSWER: Admitted.**

29. Gill, in turn, would pay REI for the equipment and services that REI supplied to Gill.

**ANSWER: Admitted.**

30. REI breached its contract by failing to supply the equipment to Gill that REI promised to provide while still accepting payment in an amount greater than the value of the equipment that REI actually supplied to Gill.

**ANSWER: REI denies the allegations set forth in paragraph 30 as untrue.**

31. Gill has been damaged by REI's breach.

**ANSWER: REI denies the allegations set forth in paragraph 31 as untrue.**

**WHEREFORE**, Defendant requests that this Honorable Court dismiss Plaintiff's claims, award Defendant its costs, attorney fees, and pre-judgment interest, and grant such other and further relief as may be just and equitable.

## COUNT THREE — UNJUST ENRICHMENT

32. Gill realleges the foregoing allegations as if fully set forth herein.

**ANSWER: REI incorporates and restates its answers to the foregoing allegations as if fully set forth herein.**

33. Gill conferred a benefit upon REI by paying it an amount in excess of the value of equipment that REI promised to supply to Gill.

**ANSWER: REI denies the allegations set forth in paragraph 33 as untrue.**

34. It would unjust for REI to retain the benefit of that payment because REI failed to supply the equipment as promised and consistent with Gill's payments.

**ANSWER: REI denies the allegations set forth in paragraph 34 as untrue.**

**WHEREFORE**, Defendant requests that this Honorable Court dismiss Plaintiff's claims, award Defendant its costs, attorney fees, and pre-judgment interest, and grant such other and further relief as may be just and equitable.

Respectfully submitted,

VARNUM LLP

Dated: July 18, 2018

By: /s/ John J. Rolecki
Ronald G. DeWaard (P44117)
John J. Rolecki (P78460)
Business Address and Telephone:
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
rgdewaard@varnumlaw.com
jjrolecki@vernumlaw.com

Attorneys for Defendant REI Automation, Inc.

## AFFIRMATIVE AND OTHER DEFENSES

**NOW COMES** Defendant REI Automation, Inc. ("Defendant"), by and through its attorneys, Varnum LLP, and states the following affirmative and other defenses:

1. Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred by the plain language of the parties' Change Orders.

3. One or more of Plaintiff's claims fail because Plaintiff expressly agreed, in writing, to alter the terms of performance and/or delivery.

4. One of more of Plaintiff's claims fail because each good at issue conformed to all applicable requirements and specifications at the time of delivery by Defendant and acceptance by Plaintiff.

5. Plaintiff accepted the goods in their then present state and waived any right to seek damages.

6. Defendant made certain of the equipment at issue available to the Plaintiff but Plaintiff refused to pick them up, causing Defendant to incur storage costs and additional costs associated with maintenance and handling.

7. Plaintiff has failed to mitigate its damages, if any.

8. Damages suffered by Plaintiff, if any, are a result of its own action and/or inaction.

9. Plaintiff's claims are barred by unclean hands, waiver, estoppel, and/or election of remedies.

10. Defendant asserts all available immunities, defenses, privileges, and rights available under the applicable statutes herein, court rules, and as permitted by law.

11.     Defendant reserves the right to assert additional defenses as they may be identified and supported by discovery conducted throughout the course of this litigation.

                                                    Respectfully submitted,

                                                    VARNUM LLP

Dated: July 18, 2018                   By: /s/ *John J. Rolecki*
                                                   Ronald G. DeWaard (P44117)
                                                   John J. Rolecki (P78460)
                                               Business Address and Telephone:
                                                 Bridgewater Place, P.O. Box 352
                                                 Grand Rapids, MI 49501-0352
                                                 (616) 336-6000
                                                 rgdewaard@varnumlaw.com
                                                 jjrolecki@vernumlaw.com

                                           Attorneys for Defendant REI Automation, Inc.

## **COUNTERCLAIMS**

Defendant/Counterclaimant REI Automation, Inc. ("REI"), for its counterclaims against Gill Industries, Inc. ("Gill") states as follows:

### INTRODUCTION AND BACKGROUND

1.      This dispute between REI and Gill (together, the "parties") arose from the aftermath of Gill's loss of a project for Volkswagen. Prior to Gill's loss of the Volkswagen project, Gill had contracted with REI to purchase four robotic welding cells, which were to be used specifically in furtherance of Gill's work for Volkswagen. When Volkswagen terminated its relationship with Gill with respect to the project for which the cells were to be used, Gill asked, and REI agreed, to modify its pre-existing purchase orders such that REI would provide Gill with three – rather than four – robotic weld cells and associated components, which REI would reconfigure to make them of more universal use, as Gill could no longer use them as originally intended.

2. The parties' restructured agreement was memorialized in a change order dated June 30, 2016. REI delivered the machinery to Gill as agreed. On or about October 12, 2106, Gill accepted the machinery and certified that it was acceptable.

3. Nevertheless, Gill never paid the remaining $115,326.50 due to REI for the accepted machinery or an additional $4,990 that Gill incurred for REI's service work. Gill never raised any issues with the completeness of REI's performance under the parties' change order until *May 2017*, after REI took stronger measures to collect Gill's unpaid invoices. It was only then that Gill asserted, contrary to the plain language of the parties' change orders, that REI was supposed to have delivered additional machinery. Gill's pre-emptive lawsuit followed.

### PARTIES, JURISDICTION AND VENUE

4. REI is a South Carolina Corporation whose principal place of business is located at 1240 Veterans Road, Columbia, South Carolina 29209.

5. Gill is a Michigan corporation whose principal place of business is located at 5271 Plainfield Ave Grand Rapids, MI 49525.

6. Venue and jurisdiction are proper in this Court.

### GENERAL ALLEGATIONS

7. REI Automation is an industry leader in providing custom industrial equipment and automation solutions in the automotive, medical, nuclear, heavy vehicle, communications, energy, and consumer goods markets.

8. Gill deals in the business of precision-engineered assemblies and modules for the automotive, multi-use vehicle and furniture industries.

**General Background.**

9. In or about April 2016, Gill had a contract with Volkswagen or its agents ("VW") to produce certain automobile components that required the utilization of robotic welding cells (the "Volkswagen Contract").

10. In furtherance of the Volkswagen Contract, Gill and/or its agents engaged REI to provide four welding cells to Gill, each of which was comprised of various components.

11. Pursuant to the parties' agreement, Gill and/or its agents sent REI Automation three purchase orders dated November 23, 2015, December 10, 2015, and April 26, 2016 (together, the "Purchase Orders") relating to the four welding cells. Copies of the Purchase Orders are attached as **Exhibit A**.

**Gill Loses The Volkswagen Contract and Cancels the Weld Cell Project.**

12. On or about May 12, 2016, Steve Strubberg, an Engineering Manager at Gill, instructed REI to immediately stop work on the four welding cells.

13. On May 13, 2016, Davide Spataro, a Supplier Readiness Advanced Specialist for Volkswagen, visited REI's facilities along with another VW representative. During this visit, Mr. Spataro informed REI that VW was cancelling the Volkswagen Contract with Gill because Gill had misrepresented its inability to acceptably process and produce certain required stamped products.

14. Mr. Spataro specifically reassured REI that REI had nothing to do with VW's cancellation of Gill's Volkswagen Contract.

15. After REI's meeting with VW, on May 13, 2018, Steve Strubberg notified REI that the Volkswagen Contract was cancelled and reiterated that REI should stop work on the weld cell project.

16. Soon thereafter, on June 15, 2016, Jack Armstrong, the Plant Manager of Gill's facility in Trenton, Georgia, cancelled the original Purchase Orders and asked REI to "email pictures of the cells and key components as they stand now at the time of cancellation." Mr. Armstrong's e-mail is attached as **Exhibit B.**

17. REI relayed its cancellation costs to Gill on June 17, 2016. At that time, the cancellation cost was $1,528,196.

**The Parties Restructure Their Agreement.**

18. On or about June 27, 2016, Craig Balas called Grant Phillips, REI's President, to introduce himself as replacing Steve Strubberg as REI's primary contact with Gill.

19. During this call, Mr. Balas acknowledged that since the Volkswagen Contract had been cancelled, there was no further need for the weld cells as they had been configured.

20. Mr. Balas then suggested that Gill would receive better value if REI continued to add labor and materials to the project by reconfiguring the existing weld cell components to produce three weld cells, with associated pedestal welders, that were more universal in nature for use in other plants and other programs in light of the Volkswagen Contract's cancellation.

21. Accordingly, on June 29, 2016, the parties entered into two change orders relating to Job Number 05001 (the "Change Orders"). Copies of the Change Orders are attached as **Exhibit C.**

22. The Change Orders changed the functionality of the parties' previous project to use the weld cell components to produce three weld cells having a more universal application, with an associated price reduction.

23. In entering into the Change Orders, the parties agreed that the existing Purchase Orders would be modified by their terms rather than entirely cancelling and creating new Purchase Orders.

24. The Change Orders specify that the "proposed solution or change" is that "[t]hree (3) robots will be shipped to the third party within 3 days of REI's receipt of $182,885, representing REI's costs to date on the project," and "[t]he project price will be reduced by the assembly labor required to build the duplicate cell."

**REI Ships the Products and Gill Accepts Them.**

25. REI provided Gill with all products that REI agreed to produce under the Change Orders, including the three robotic weld cells.

26. REI also provided Gill with unassembled cell items which were originally to contribute to the compilation of the fourth weld cell under the parties' original agreement. Such items were delivered or made available to Gill in the state that such items were in prior to Gill's instruction to halt work on the fourth weld cell.

27. To the extent that completion of the fourth cell would have required labor, assembly, development, component integration, or other work that had not been completed at the time Gill ordered REI to stop work on the original project, no such labor, assembly, development, item integration or other component integration was provided because it was outside of the scope of the parties' Change Orders.

28. REI also provided Gill with all hardware associated with the tooling, including pneumatic clamping, custom machined clamp arms, and fixture plates.

29. Gill failed to pick up certain fixture plates, among other items, which had been associated with the original project and which REI made available to Gill.

30. On October 12, 2016, Mr. Balas, with full authority and in the course and scope of his duties, signed an REI Automation Customer Acceptance Form for Job Number 5001, corresponding to purchase orders 61825-04 (for tooling) and 46912-00 (for automation) ("Acceptance Form"). A copy of the Acceptance Form is attached as **Exhibit D.**

31. By signing the Acceptance Form, Gill acknowledged that "the functionality of the system is accepted." *See* Ex. D. REI was entitled to rely, and did rely, upon the Acceptance Form.

**Gill Fails to Pay for the Accepted Products and Services.**

32. The total purchase price under the original Purchase Agreements was $1,965,180.

33. The Change Orders reduced the total purchase price by $118,386. Accordingly, the net total of Gill's purchase under the Change Orders was $1,846,794.

34. Gill has paid $1,731,467.25 against the foregoing net total of its debt to REI Under the Change Orders.

35. On or about March 31, 2017, REI sent Gill Invoice No. 05001-10 in the amount of $115,326.50, reflecting Gill's shortfall of $115,326.75 of the foregoing net total of its debt to REI under the Change Orders (The "Products Debt"). A copy of invoice number 05001-10 is attached as **Exhibit E.**

36. Gill has not paid REI the Products Debt.

37. The time within which Gill agreed to pay the Products Debt has expired.

38. Gill did not dispute the Products Debt within the period in which it was due for payment.

39. REI also performed general repair services for Gill, including repairing certain camera issues caused by Gill's erroneous reprogramming. REI valued these services at $4,990

(The "Services Debt") and rendered an invoice to Gill for the same ("Invoice 05002-5"). A copy of Invoice 05002-5 is attached as **Exhibit F.**

40. Gill has not paid REI the Services Debt.

41. The time within which Gill agreed to pay the Services Debt has expired.

42. Gill did not dispute the Services Debt within the period in which it was due.

43. The Products Debt and the Services Debt total $120,316.75 (the "Outstanding Debt").

44. The Outstanding Debt is due and owing to REI.

## COUNT I
## BREACH OF CONTRACT
## (Product Debt)

45. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

46. REI and Gill entered into the Change Orders, which modified the Purchase Orders and forms a valid contract (the "Contract").

47. REI fully performed its obligations under the Contract.

48. Gill has breached the Contract by failing to pay REI the Product Debt as agreed thereunder and which remains outstanding.

49. REI has been damaged as a result of Gill's breach and is entitled to money damages in an amount not less than $115,326.75 , plus costs and pre-judgment interest.

WHEREFORE, REI respectfully requests that this Court enter judgment in its favor and against Gill, awarding REI damages not less than $115,326.75 plus interest, costs, attorneys' fees and such other relief that the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT
## (Services Debt)

50. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

51. REI agreed to perform maintenance on certain of Gill's robotic equipment in exchange for remuneration from Gill (the "Services Agreement").

52. REI performed maintenance on certain of Gill's robotic equipment.

53. REI issued Invoice 05002-5 to Gill, totaling $4,990, on account of such maintenance.

54. Gill has not paid Invoice 05002-5.

55. Gill has breached the Services Agreement by failing to pay REI the Services Debt as agreed thereunder and which remains outstanding.

56. REI fully performed its obligations under the Services Agreement.

57. REI has been damaged as a result of Gill's breach and is entitled to money damages in an amount not less than $4,990, plus costs and pre-judgment interest.

WHEREFORE, REI respectfully requests that this Court enter judgment in its favor and against Gill, awarding REI damages not less than $4,990, plus interest, costs, attorneys' fees and such other relief that the Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT

58. The allegations in the previous paragraphs are incorporated by reference as if fully restated herein.

59. Even if the Court were to find that there was no binding Contract or Services Agreement, as alleged above, REI conferred a substantial benefit upon Gill by providing Gill

with products and services, as alleged herein, which were valued in an amount in excess of the monies that Gill has paid to REI.

60. Gill's conduct in connection with the Product Debt was unjust and inequitable.

61. Gill's conduct in connection with the Services Debt was unjust and inequitable.

62. Through its conduct, Gill has been unjustly enriched.

63. It would unjust for Gill to retain the benefit of REI's products and services because Gill failed to pay REI their equivalent value.

WHEREFORE, REI respectfully requests that this Court enter judgment in its favor and against Gill, awarding REI damages not less than $120,316.75, plus interest, costs, attorneys' fees and such other relief that the Court deems just and proper.

Respectfully submitted,

VARNUM LLP

Dated: July 18, 2018

By: */s/ John J. Rolecki*
Ronald G. DeWaard (P44117)
John J. Rolecki (P78460)
Business Address and Telephone:
  Bridgewater Place, P.O. Box 352
  Grand Rapids, MI 49501-0352
  (616) 336-6000
  rgdewaard@varnumlaw.com
  jjrolecki@vernumlaw.com

Attorneys for Defendant REI Automation, Inc.

13776769_2.DOCX